Mark S. Cohen
mcohen@cohengresser.com
Sandra C. McCallion
smccallion@cohengresser.com
**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Fax: (212) 957-4514

J. Michael Huget (MI P39150)
mhuget@honigman.com
Jeffrey K. Lamb (MI P76738)
jlamb@honigman.com
Roger P. Meyers (MI P73255)
rmeyers@honigman.com
**HONIGMAN MILLER SCHWARTZ
AND COHN LLP**
130 S. First Street, 4th Floor
Ann Arbor, MI 48104
Telephone: (734) 418-4200
Fax: (734) 418-4257
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

LIVEPERSON, INC., :
                         :
         *Plaintiff,* :
                         :   Index No. 14-cv-01559-RWS
      - against - :
                         :   **ECF CASE**
24/7 CUSTOMER, INC., :
                         :
        *Defendant.* :

------------------------------------------------------------- x

# <u>LIVEPERSON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.    [24]7 MISAPPLIES *TWOMBLY* AND *IQBAL*, AND SEEKS TO IMPOSE IMPROPER AND UNWARRANTED HEIGHTENED PLEADING REQUIREMENTS IN THIS CASE ................................................................ 2

II.    LIVEPERSON'S CLAIMS ARE PLAUSIBLE ................................................ 4

    A.    LivePerson Pled Both [24]7's Infringing Acts And The Timing Of [24]7's Copyright Infringement .................................................. 4

    B.    LivePerson Pled The Existence Of "Technological Measures" And "Circumvention" Of Those Measures In Its Claim For Violation Of The Digital Millennium Copyright Act ...................................... 7

    C.    LivePerson Pled Both Unauthorized Access And Damage In Support Of Its Claim For Violation Of The Computer Fraud And Abuse Act ....... 8

    D.    LivePerson Pled Misappropriation Of Its Trade Secrets ........................ 11

        1.    LivePerson's "algorithms" and "methods" are trade secrets. ....... 11

        2.    LivePerson plausibly alleged "improper use" by [24]7. ............... 14

    E.    LivePerson Pled A Valid Breach Of Contract Claim .............................. 15

        1.    LivePerson alleged the existence of a contract. ........................... 15

        2.    [24]7 breached the contracts numerous ways. ............................. 16

        3.    LivePerson pled recoverable damages. ........................................ 17

    F.    LivePerson Pled A Plausible Claim For Intentional Interference With Advantageous Existing Or Prospective Economic Relationships ............ 18

        1.    LivePerson alleged interference By [24]7. ................................... 18

        2.    LivePerson alleged improper interference with actual clients, not mere competition, and damages. ............................................. 19

    G.    LivePerson's False Advertising Claim Under The Lanham Act Is Valid .................................................................................. 20

H. LivePerson Pled A Plausible Claim For Unfair Competition ................... 22

I. LivePerson Is Entitled To Plead And Has Pled A Valid Unjust Enrichment Claim .................................................................................... 23

III. IF THE COURT CONCLUDES THAT ANY OF LIVEPERSON'S CLAIMS LACKS SUFFICIENT DETAIL, LIVEPERSON RESPECTFULLY REQUESTS LEAVE TO AMEND ...................................... 24

CONCLUSION ..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)......................................................................................*Passim*

*Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC et al.,*
   875 F. Supp. 2d 511 (D. Md. 2012)...................................................................21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)......................................................................................*Passim*

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,*
   448 F.3d 573 (2d Cir. 2006)..............................................................................23

*Braden v Wal-Mart Stores, Inc.,*
   588 F.3d 585 (8th Cir. 2009) ...........................................................................16

*Calyon v. Mizuho Securities USA, Inc.,*
   No. 07 Civ. 2241, 2007 WL 2618658 (S.D.N.Y. Sept. 5, 2007)...........................9

*Capitol Records, Inc. v. Wings Digital Corp.,*
   218 F. Supp. 2d 280 (E.D.N.Y. 2002) ..............................................................5-6

*Carvel Corp. v. Noonan,*
   818 N.E.2d 1100 (N.Y. 2004)...........................................................................19

*Davidson & Assoc., Inc. v. Internet Gateway, Inc.,*
   334 F. Supp. 2d 1164 (E.D. Mo. 2004)...............................................................8

*Davidson & Associates v. Jung,*
   422 F.3d 630 (8th Cir. 2005) ..............................................................................8

*DeWitt Stern Grp., Inc. v. Eisenberg,*
   ___ F. Supp. 2d ___, 2014 WL 1388652 (S.D.N.Y. 2014 Apr. 9, 2014) (Sweet, J.) .............24

*DiCosomo v. Getzoff,*
   2004 N.Y. Misc. LEXIS 3125 (N.Y. Sup. Ct. Apr. 8, 2004)................................20

*Ellis v. Jean,*
   No. 10–8837(LMM), 2011 WL 6368555 (S.D.N.Y. Dec. 16, 2011) .......................5

*Freedom Calls Foundation v Bukstel,*
   No. 05-CV-5460, 2006 WL 845509 (E.D.N.Y. Mar. 3, 2006)...............................12

Page(s)

*Freidus v. ING Groep N.V.*,
　　736 F. Supp. 2d 816 (S.D.N.Y. 2010)....................................................................3

*Fuji Photo Film, U.S.A., Inc. v McNulty*,
　　669 F. Supp. 2d 405 (S.D.N.Y. 2009)..................................................................16

*Geritrex Corp. v. Demarite Indus., LLC*,
　　910 F. Supp. 955 (S.D.N.Y. 1996)......................................................................11

*Harris v. New York*,
　　186 F.3d 243 (2d Cir. 1999)................................................................................15

*Home & Nature Inc. v. Sherman Specialty Co., Inc.*,
　　322 F. Supp. 2d 260 (E.D.N.Y. 2004) ...............................................................6-7

*In re Fosamax Prods. Liability Lit.*,
　　965 F. Supp. 2d 413 (S.D.N.Y. 2013)...................................................................2

*In re ITT Corp. Derivative Litig.*,
　　588 F. Supp. 2d 502 (S.D.N.Y. 2008).................................................................25

*JBC Holding NY, LLC v. Pakter*,
　　931 F.Supp. 2d 514 (S.D.N.Y. 2013)................................................................9-10

*Jinno International Co. v. Premier Fabrics, Inc.*,
　　No. 12 Civ. 07820, 2013 U.S. Dist LEXIS 129745 (May 24, 2013)...................17

*Kaufman v. Nest Seekers, LLC*,
　　No. 05 CV 6782, 2006 WL 2807177 (S.D.N.Y. Sept. 26, 2006) ..........................11

*Kelly v. L.L. Cool J.*,
　　145 F.R.D. 32 (S.D.N.Y. 1992) ............................................................................5

*Kirch v. Liberty Media Corp.*,
　　449 F.3d 388 (2d Cir. 2006)................................................................................18

*Kwan v Schlein*,
　　441 F. Supp. 2d 491 (S.D.N.Y. 2006)................................................................22

*Lapp Insulators LLC v Gemignani*,
　　No. 09-cv-0694A, 2011 WL 1198648 (W.D.N.Y. Mar. 9, 2011) ..................14-15

*Marketing Tech. Solutions, Inc. v. Medizine, LLC*,
　　No. 09 civ. 8122, 2010 WL 2034404 (S.D.N.Y. May 18, 2010)............................9

*Medtech Products Inc v Ranir, LLC*,
　　596 F. Supp. 2d 778 (S.D.N.Y. 2008)............................................................13, 15

iv

Page(s)

*Merck Eprova AG v. Brookstone Pharm.*,
   LLC, 920 F. Supp. 2d 404 (S.D.N.Y. 2013) ...................................................22

*Merck Eprova AG v. Gnosis S.p.A.*,
   __F.3d__, 2012 WL 3715078 (2d Cir. July 29, 2014)..................................22

*N. Atl. Instruments, Inc. v. Haber*,
   188 F.3d 38 (2d Cir. 1999)................................................................... 11-12

*N. State Autobahn, Inc. v. Progressive Ins. Grp.*,
   928 N.Y.S.2d 199 (N.Y. Sup. Ct. 2011) .........................................................20

*Nat'l Market Share, Inc. v. Sterling Nat'l Bank*,
   392 F.3d 520 (2d Cir. 2004)..........................................................................15

*Oliver Sch., Inc. v. Foley*,
   930 F.2d 248 (2d Cir. 1991)..........................................................................24

*Plunket v. Doyle*,
   No. 99–11006, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ...........................5

*Register.com, Inc. v. Verio, Inc.*,
   126 F. Supp. 2d 238 (S.D.N.Y. 2000)..............................................................9

*Richard Feiner & Co., Inc. v. Larry Harmon Pictures Corp.*,
   38 F. Supp. 2d 276 (S.D.N.Y. 1999)................................................................6

*Ritani, LLC v. Aghjayan* (*Ritani I*),
   880 F. Supp. 2d 425, 439 (S.D.N.Y. 2012)....................................3, 13, 15, 20

*Sawabeh Info. Servs. Co. v. Brody*,
   832 F. Supp. 2d 280 (S.D.N.Y. 2011)...............................................................3

*Servotec USA, LLC v Ruag Ammontec USA, Inc.*,
   No. 11-cv-0049, 2011 WL 4736355 (N.D.N.Y. Oct. 6, 2011) ...................13, 15

*Software AG, Inc. v. Consist Software Solutions, Inc.*,
   No. 08 Civ. 389, 2008 WL 563449 (S.D.N.Y. Feb. 21, 2008) ........................21

*Spagnola v Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009)............................................................................15

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002)...................................................................................2, 17

*Tangorre v. Mako's, Inc.*,
   No. 01-CIV-443, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) ..........................7

Page(s)

*U1it4less, Inc. v. Fedex Corp.*,
    906 F. Supp. 2d (S.D.N.Y. 2012)...........................................................17

*University Sport Pub. Co. v. Playmakers Media Co.*,
    725 F. Supp. 2d 378 (S.D.N.Y. 2010).....................................................10

*Warren v. John Wiley & Sons, Inc.*,
    952 F. Supp. 2d 610 (S.D.N.Y. 2013)......................................................3

STATUTES

18 U.S.C. § 1030.............................................................................10, 11

28 U.S.C. § 1125(a)...............................................................................22

Computer Fraud and Abuse Act, 18 U.S.C. § 1030.............................8, 9-11

Digital Millenium Copyright Act, 17 U.S.C. § 1201(a) ..........................7-8

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2)..............................................................................3

Rule 8 .............................................................................................*Passim*

Rule 9 ...............................................................................................2-3

Rule 56 ..............................................................................................18

## INTRODUCTION

[24]7's Motion to Dismiss improperly attempts to jettison *Twombly* and *Iqbal* and impose heightened pleading requirements on each of LivePerson's claims. [24]7 simply ignores the voluminous factual detail that LivePerson provided regarding the bases for its claims in no less than 28 pages of the First Amended Complaint ("FAC") and instead repeatedly and incorrectly asserts that LivePerson has failed to plead claims that are plausible. [24]7's rampant disregard for LivePerson's intellectual property rights and its own contractual obligations, and [24]7's other malicious and wrongful conduct gives rise to multiple statutory and common law causes of action. LivePerson has asserted ten such claims in its FAC and has plausibly pled the elements of each of them. Despite [24]7's repeated entreaties to the contrary, notice pleading remains the rule for the claims set forth by LivePerson in the FAC, and LivePerson has more than satisfied the burden imposed by Rule 8, *Twombly*, *Iqbal*, and their progeny.

As just one example, [24]7 improperly asserts in its Motion that LivePerson has failed to plead the existence of a contract, breach, or damages in support of its breach of contract claim (Count V). This argument flies squarely in the face of what is written in black and white in the FAC. LivePerson not only pled the existence of a contract, it attached two operative contracts as exhibits to the FAC. (FAC ¶¶ 25-34 (identifying contractual obligations); Exs. A and B (attaching contracts).) LivePerson also pled how [24]7 breached those contracts, what provisions [24]7 breached, and how LivePerson was damaged. (FAC ¶¶ 35-49 (identifying wrongful conduct); 76-77 (specifically identifying contract provisions breached); 50-51, 79 (describing damages, including, "the loss of clients").) Such pleading is more than sufficient to give notice of LivePerson's breach of contract claim, and the detailed allegations in the FAC provide LivePerson's other claims with further factual support. LivePerson has pled facially plausible claims, and Court should deny [24]7's motion in its entirety.

## ARGUMENT

I.      **[24]7 MISAPPLIES *TWOMBLY* AND *IQBAL*, AND SEEKS TO IMPOSE IMPROPER AND UNWARRANTED HEIGHTENED PLEADING REQUIREMENTS IN THIS CASE**

"A motion to dismiss under 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests." *In re Fosamax Prods. Liability Lit.*, 965 F. Supp. 2d 413, 415 (S.D.N.Y. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[1]   Although "[t]hreadbare recitals of a cause of action's elements" are not sufficient, neither must a plaintiff provide "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  All that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)).

The *Twombly* Court repeatedly emphasized that it was applying, not eradicating, the Rule 8 standard.  "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also id.* at 569 n.14 (explaining that the Court did not "apply any 'heightened' pleading standard" or "seek to broaden the scope" of Rule 9(b)).  The Court punctuated this point by reaffirming *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), in which it reversed the Second Circuit for "impermissibly appl[ying] what amounts to a heightened pleading requirement by insisting that [plaintiff] allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Since *Twombly* issued, its plausibility requirement has been thoroughly analyzed.  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a

---

[1] Unless indicated, internal citations and quotation marks have been omitted.

claim to relief that is plausible on its face.'" *Ritani, LLC v. Aghjayan* (*Ritani I*), 880 F. Supp. 2d 425, 439 (S.D.N.Y. 2012) (Sweet, J.) (quoting *Iqbal*, 556 U.S. at 678).   "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.* (quoting *Cohen v. Stevanovich*, 722 F.Supp.2d 416, 423 (S.D.N.Y. 2010)).  A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 293 (S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 678).  Time and again, courts have drawn a clear line between the plausibility requirement of Rule 8(a)(2) and the detailed recitation of facts demanded in cases of fraud and mistake under the Rule 9(b) heightened-pleading standard.  *See, e.g.*, *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 616 (S.D.N.Y. 2013) ("[U]nlike copyright claims, claims for fraud . . . must 'state with particularity the circumstances constituting fraud or mistake.'") (quoting Fed. R. Civ. P. 9(b)); *Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 826-27 (S.D.N.Y. 2010) (applying Rule 8 and not Rule 9 where complaint did not allege fraud).

Here, [24]7 wrongly criticizes LivePerson's FAC for such alleged deficiencies as failing to identify by name the "particular customer[s] and employee[s]" with whom [24]7 interfered. (Def's Mem. ("Mem."), Dkt. #26, at 17.)  Indeed, it takes no more than a glance at [24]7's demands in its request for a more definite statement to see how far astray [24]7 has gone in misstating the threshold for even filing a complaint.  (*See* Mem. at 24.)  To contend, as [24]7 does, that a complaint is subject to dismissal any time it lacks specific dates on which wrongdoing occurred, specific identification of which portions of a registered, copyrighted work were infringed, which websites were invaded, the identities of lost clients, and more, would close the door to any plaintiff who cannot present a fully established case at the outset.  Nothing in

Rule 8, *Twombly*, *Iqbal*, or their progeny supports 24[7]'s misstatement of federal notice pleading requirements.

[24]7 denigrates the extensive factual recitation that LivePerson set forth in its FAC, inexplicably mischaracterizing and ignoring the FAC's 28 pages of extensively detailed factual assertions.   (Mem. at 1 (quoting *Iqbal*, 556 U.S. at 678).)  This is simply wrong.  LivePerson has provided considerable detail—with real-world examples, no less—about how its proprietary software analyz[es] website visitors' behavior, applies artificial intelligence, and determines whether and how to engage visitors; about the actual malicious [24]7 code that LivePerson found embedded on LivePerson client websites that was designed to intercept and collect data on LivePerson's functionality; and about the millions of tracking and indexing markers and other spyware [24]7 injected into LivePerson's servers by making unauthorized use of registered and copyrighted LivePerson software, among other facts pled in the FAC.  (FAC ¶¶ 19, 20, 40, 41.)  [24]7's repeated overreaching accusation that the FAC "is devoid of facts," is not plausible, and the Court should reject it.

## II.     LIVEPERSON'S CLAIMS ARE PLAUSIBLE

[24]7 has incorrectly asserted that none of LivePerson's claims are supported by sufficient factual allegations to plausibly state a claim upon which relief can be granted.  That position simply cannot be squared with the extensive factual details set forth in black and white on no less than 28 pages in the FAC.  LivePerson has properly pled its claims, and the Court should deny [24]7's motion.

### A.     LivePerson Pled Both [24]7's Infringing Acts And The Timing Of [24]7's Copyright Infringement

[24]7 asserts that LivePerson has failed to state a claim for copyright infringement because LivePerson has "only" identified one registered work and supposedly has not pled facts

plausibly establishing infringement of that work, or pled the time period of [24]7's infringement. [24]7 is wrong on all counts.

In order to comply with Rule 8, a complaint alleging copyright infringement must state: "[1] which specific original works are the subject of the claim, [2] that plaintiff owns the copyright, [3] that the works have been registered in accordance with the copyright statute[,] and [4] by what acts and during what time defendant has infringed the copyright." *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992).  When pleading its claims, "a plaintiff need only give the opposing party fair notice of what the plaintiff's claim is and the grounds on which it rests." *Capitol Records, Inc. v. Wings Digital Corp.,* 218 F. Supp. 2d 280, 284 (E.D.N.Y. 2002) (denying motion to dismiss). "Neither *Twombly* nor *Iqbal* requires a plaintiff in a copyright infringement action to plead specific evidence or extra facts beyond what is needed to make the claim plausible." *Ellis v. Jean,* No. 10–8837(LMM), 2011 WL 6368555, at *4 (S.D.N.Y. Dec. 16, 2011) (denying motion to dismiss).  "Once there has been notice of the claim, factual and evidentiary issues...should be developed during discovery." *Capitol Records,* 218 F. Supp. 2d at 284; *see also Plunket v. Doyle,* No. 99–11006, 2001 WL 175252, at *6 (S.D.N.Y. Feb. 22, 2001) (stating plaintiff need not specify each infringing act, as "discovery is likely to provide many of the details of the allegedly infringing acts" where—as here—much of the relevant information may be exclusively in the defendant's control).

Here, LivePerson has pled that it owns a copyright in the LivePerson Visitor Monitoring Module and has registered that copyright with the United States Copyright Office—and [24]7 concedes these points.  (See FAC ¶ 53 and FAC Ex. C.; Mem. at 5.)   LivePerson also has pled infringement in multiple places in its FAC, including by stating that [24]7 copied and made unauthorized use of LivePerson's own copyrighted software code to make calls to LivePerson's

servers for the purpose of mining LivePerson's data, and reverse engineering and copying LivePerson's copyrighted technology.  (FAC ¶ 54; *see also id*. ¶¶ 40-41 explaining how [24]7 siphons and then uses LivePerson's copyrighted software code to mimic LivePerson and circumvent the security measures on LivePerson's servers.)  LivePerson's detailed pleading in the FAC more than satisfies Rule 8.  *See Capitol Records,* 218 F. Supp. 2d at 284 (holding plaintiffs had provided a "short plain statement of copyright infringement" and were "not required to state with particularity specific infringing acts or the times of such acts"); *Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) ("the plaintiff is not required to assert exactly which individual elements of the copyrighted works were infringed").

LivePerson also has satisfactorily pled the timing of [24]7's infringement.  The FAC makes clear that [24]7 "obtained non-public access to LivePerson's technology and business information in connection with the Co-Marketing Agreement and MSA," and fixes the start of the parties' contractual relationship in 2006.  (FAC ¶¶ 36, 4, 6, 25.)  Going further, LivePerson pled that it "recently has uncovered evidence that [24]7 has abused this access and misappropriated and infringed LivePerson's copyrighted technology…in order to create and refine [24]7's own competing live-interaction technology…."  (*Id*. ¶ 7.)  As such, LivePerson has fixed the time period of [24]7's infringement between 2006 when the parties began their contractual relationship and May 2014 when LivePerson filed the FAC.  This is sufficiently specific pleading of the time element of a copyright infringement claim.  *See Richard Feiner & Co., Inc. v. Larry Harmon Pictures Corp.*, 38 F. Supp. 2d 276, 279-80 (S.D.N.Y. 1999) (denying motion to dismiss and holding: "A reader of the complaint can conclude that the works whose copyrights are listed therein are those alleged to have been infringed, and it is sufficient that the

complaint alleges that the infringing acts took place during the time that [plaintiff] owned the rights to the [works].”); *Tangorre v. Mako's, Inc.*, No. 01-CIV-443, 2002 WL 313156, at *3 (S.D.N.Y. Jan. 30, 2002) (denying motion to dismiss where plaintiff had alleged the time period in which the infringing acts had occurred); *Home & Nature Inc.*, 322 F. Supp. 2d at 266-67 (finding sufficient plaintiff's statement that “the defendant has, since December 2000, infringed and continues to infringe ‘one or more’ of its copyrights….”)

Contrary to [24]7's assertions, LivePerson has plausibly pled both [24]7's infringing conduct and the time period during which the infringement occurred.  The Court should deny [24]7's motion with respect to Count I of the FAC.

### B.     LivePerson Pled The Existence Of “Technological Measures” And “Circumvention” Of Those Measures In Its Claim For Violation Of The Digital Millennium Copyright Act

[24]7 seeks to dismiss LivePerson's claim for violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201(a) (“DMCA”), by asserting LivePerson has failed to plead the existence of the requisite “technological measure” securing LivePerson's copyrighted work or “circumvention” of that measure within the meaning of the DMCA.  (Mem. at 7-9.)  Once again, [24]7 is wrong.

LivePerson pled in the FAC that [24]7 has used information gleaned via its presence on client websites shared with LivePerson to maliciously “mimic LivePerson itself and thereby circumvent LivePerson's security measures” when “making calls to LivePerson's servers.” (FAC ¶ 41, 60.)  Once inside LivePerson's secure environment, [24]7 “has been able secretly to inject millions of tracking and indexing markers into LivePerson's systems…to mine LivePerson's confidential and proprietary system data,” including its copyrighted software code. (*Id*.)

There is no question that the proprietary signals that servers and other computers use to communicate with each LivePerson's protected network other constitute "technological measures" under the DMCA. *See Davidson & Associates v. Jung*, 422 F.3d 630, 635-36, 641 (8th Cir. 2005) (upholding DMCA claim where "technological measure" was the "secret handshake" in the proprietary "protocol language" that plaintiff's clients and servers used to communicate). As in *Davidson*, LivePerson's computer system uses unique protocol language as a "technological measure" to secure its internal communications, and LivePerson has therefore plausibly pled that element of its DMCA claim.

Moreover, courts have held that mimicking computer communication and authentication routines to gain access to a protected computer system is "circumvention" within the meaning of the DMCA. *See id*. at 641 (upholding lower court's finding of circumvention where defendants used "reverse-engineering" of plaintiff's technology to create an "emulator" that mimicked plaintiff's software and bypassed plaintiff's security measures) (*aff'g Davidson & Assoc., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1184-85 (E.D. Mo. 2004) (holding same)). Here, LivePerson has pled that [24]7 reverse engineered LivePerson's proprietary software in order to mimic LivePerson's computer communication routines to gain illicit access to LivePerson's works. (FAC ¶¶ 41, 60.) LivePerson has pled "circumvention" within the meaning of the DMCA, and the Court should deny [24]7's Motion and sustain Count III of the FAC.

    C.    **LivePerson Pled Both Unauthorized Access And Damage In Support Of Its Claim For Violation Of The Computer Fraud And Abuse Act**

LivePerson's claim for [24]7's violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), is plausible because LivePerson has pled "unauthorized access" and "access in excess of authorization" as well as the requisite statutory "damage or loss." [24]7's arguments to the contrary are unavailing, and the Court should reject them.

First, as [24]7 concedes, neither the Second Circuit nor this Court have adopted the "narrow" interpretation of the CFAA that [24]7 would apply here.  (*See* Mem. at 9 (citing *JBC Holding NY, LLC v. Pakter*, 931 F.Supp. 2d 514, 522 (S.D.N.Y. 2013)).)  As the *JBC Holding* court recognized, there is a wealth of authority from this District upholding CFAA claims under the "broader" interpretation of the statutory language.  *See* 931 F. Supp. at 522 (citing cases); *Marketing Tech. Solutions, Inc. v. Medizine, LLC*, No. 09 civ. 8122, 2010 WL 2034404, at *7 (S.D.N.Y. May 18, 2010) (holding allegation that employee who accessed data in violation of confidentiality agreement "exceeded his authorized use"); *Calyon v. Mizuho Securities USA, Inc.*, No. 07 Civ. 2241, 2007 WL 2618658, at *1 (S.D.N.Y. Sept. 5, 2007) (denying motion to dismiss CFAA claim where employer alleged employees were not authorized to access computer system for purpose of collecting proprietary documents for later use by a competitor); *Register.com, Inc. v. Verio, Inc.*, 126 F. Supp. 2d 238, 253 (S.D.N.Y. 2000) (upholding CFAA claim where defendants' knowledge that data would be used for a contractually unauthorized purpose rendered access "unauthorized" even if defendant's means of accessing data were not technically prohibited).  In any event, LivePerson's allegations of [24]7's "unauthorized access" and "access in excess of authorization" pass muster under either interpretation of the statue.

LivePerson has repeatedly alleged that [24]7 exceeded its authorized contractual access to LivePerson's computer systems "millions of times" for the contractually improper purposes of "siphoning data" from LivePerson's computers to "reverse engineer and copy" LivePerson's customer engagement technology, "manipulate the operation of LivePerson's technology" on shared customer websites, and to interfere with LivePerson's customer relationships. (FAC ¶¶ 65, 37, 39-42.)  Any one of these "unauthorized purposes" is sufficient to state a claim for a CFAA violation.  *See Verio*, 126 F. Supp. 2d at 253.  Moreover, even under the "narrow"

interpretation of the CFAA [24]7 favors, LivePerson has pled a claim because [24]7's injection of "millions of tracking and indexing markers" and other "spyware" into LivePerson's computer systems is outright computer hacking and not a type of "access" to LivePerson's computers authorized in any way by the parties' contractual agreements.  (*See* FAC ¶¶ 39, 41, Exs. A and B.)  Even the *JBC Holdings* court recognized that allegations that the defendants installed spyware into the plaintiff's computer system to remotely take data "would state a cause of action under the CFAA."  931 F. Supp. 2d at 525-26.  [24]7 omits any discussion of these factual allegations in the FAC when attacking LivePerson's CFAA claim, and they are fatal to [24]7's argument.

LivePerson also has pled facts showing "damage" or "loss" cognizable under the CFAA. Under the statute, "loss" is defined as "reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of the interruption of service...." 18 U.S.C. § 1030(e)(11).  Here, LivePerson has pled that [24]7 injected "millions of tracking and indexing markers" and other spyware into LivePerson's computer systems and also improperly "suppressed the operation of" and "sabotaged" LivePerson's technology on its clients' websites in order to interfere with LivePerson's client relationships and lure those clients to [24]7's competing services.  (*See* FAC ¶¶ 39, 41, 43, 44.)  All of LivePerson's costs spent assessing the extent of [24]7's deployment of spyware on LivePerson's computers, removing the spyware, restoring LivePerson's computers to their prior condition, as well as LivePerson's lost revenue from client relationships impaired or destroyed by [24]7's "suppression" and sabotage of LivePerson's computer systems are properly "losses" under the CFAA and are components of

LivePerson's compensatory damages claim.  *See University Sport Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 387-88 (S.D.N.Y. 2010) (holding costs of investigating computer breach, assessing damage, and determining whether remedial measures were needed substantiated CFAA claim); *Kaufman v. Nest Seekers, LLC*, No. 05 CV 6782, 2006 WL 2807177, at *8 (S.D.N.Y. Sept. 26, 2006) (denying motion to dismiss because "costs involved in investigating the damage to [a] computer system may constitute ... loss," even where no actual damage was discovered).  And there is no question that LivePerson's such damages in this case exceed the statutory minimum of $5000.  *See* 18 U.S.C. §§ 1030(g), 1030(4)(A)(i)(I).

### D.    LivePerson Pled Misappropriation Of Its Trade Secrets

To assert a claim for misappropriation of trade secrets, a plaintiff must plead facts showing "(1) it possessed a trade secret, and (2) [Defendant] using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means."  *See Geritrex Corp. v. Demarite Indus., LLC*, 910 F. Supp. 955, 961 (S.D.N.Y. 1996).  The FAC pleads both elements.

### 1.    LivePerson's "algorithms" and "methods" are trade secrets.

New York law protects as a trade secret "any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it."  *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999).  To determine whether information qualifies as a trade secret, New York courts generally consider six factors: "(1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; [and] (6) the

ease or difficulty with which the information could be properly acquired or duplicated by others." *Id.* These factors are guideposts, not elements, and it is not necessary to plead every single factor to state a claim. *See Freedom Calls Foundation v Bukstel*, No. 05-CV-5460, 2006 WL 845509, at *15 (E.D.N.Y. Mar. 3, 2006) (finding "Plaintiff's likelihood of success on its misappropriation claim is considerable" where only four factors favored trade-secret consideration).

Here, LivePerson alleged that it developed "predictive algorithms" and "proprietary behavioral analysis methods" based on "many years' of research undertaken at great expense." (FAC ¶¶ 1, 2.) LivePerson further described its "intensive investment for more than a decade" in developing an "enterprise-grade" product and "refining its technology to meet the needs of such clients." (FAC ¶ 8; *see also* FAC ¶ 18, 19.) This alone goes far beyond "identify[ing] the subject matter of the trade secret in at least general terms." (*See* Mem. at 12.)

LivePerson also explained that its algorithms and methods "allow LivePerson to understand when a website visitor needs help, and what type of help or content will benefit that visitor at any given moment" based on "sophisticated analysis of website visitors' actions and behaviors online, both individually and in the aggregate" and based on "identifying key actions or 'events' that take place during one or more web browsing sessions, and applying artificial intelligence to determine whether, when, and how to initiate a personalized interactive experience to assist that web visitor." (FAC ¶¶ 17-19.) LivePerson even provided a detailed example to illustrate what these algorithms and methods allow it to do for its customers: "a visitor to a financial institution's website can be intuitively routed to an operator specializing in mortgages, investments, or technical support depending on the web browsing activity exhibited by the visitor." (*See* FAC ¶ 20.)

12

Finally, LivePerson alleged that it is "one of only a few companies" capable of providing such services for global, enterprise-grade clients and that legitimate development of the algorithms and methods underpinning that capability would require "millions of dollars in research and development costs, and many years' worth of effort and investment." (FAC ¶¶ 8, 35.) LivePerson also detailed specific ways in which it protects this valuable information, including confidentiality provisions and prohibitions against reverse engineering, infringing, or disrupting LivePerson's technology in its direct contracts with [24]7, as well as confidentiality and limited-use license restrictions in its client agreements, which [24]7 is subject to as a vendor to those LivePerson clients. (FAC ¶¶ 26, 28, 29, 32, 33.)

These allegations establish that LivePerson's algorithms and methods constitute trade secrets under New York law. *See Medtech Products Inc v Ranir, LLC*, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) (upholding trade secret misappropriation claim, holding "specificity as to the precise trade secrets misappropriated is not required" and citing cases). The supporting allegations in *Medtech* are materially indistinguishable from those here: expenditure of "considerable time, effort and money developing its trade secrets"; the use of "confidentiality agreements" to protect that information; and a competitor that "was able to virtually eliminate the development time normally associated with entering into a new line of products" and "create a competing product on an expedited basis, cutting out a time-consuming and expensive development process." *Id.* at 787-88. The *Medtech* court expressly determined that a misappropriation claim on such facts was "plausible," and so it is here. *Id.* at 790; *see also*, *Ritani I*, 880 F. Supp. 2d at 450-51 (approving claim and stating "the precise details as to the specific information…misappropriated and what exactly [Defendant] did with this information is peculiarly within [his] possession. . . and will be uncovered during…discovery"); *Servotec USA,*

13

*LLC v Ruag Ammontec USA, Inc.*, No. 11-cv-0049, 2011 WL 4736355, at \*5 (N.D.N.Y. Oct. 6, 2011) (upholding claims on less detailed allegations than LivePerson's); *Lapp Insulators LLC v Gemignani*, No. 09-cv-0694A, 2011 WL 1198648, at \*10 (W.D.N.Y. Mar. 9, 2011) (same, and noting that additional facts "will be revealed during discovery").   LivePerson has pled the existence of trade secrets.

2.      LivePerson plausibly alleged "improper use" by [24]7.

[24]7's criticism of LivePerson's allegations of improper use is similarly misguided. LivePerson alleged that it had found "24/7 programming code embedded on client websites that is clearly designed to siphon data regarding the operation and activity of LivePerson's proprietary behavioral analytics and predictive targeting functionalities—and then stream this information back to 24/7's servers."  (FAC ¶ 40.)  LivePerson even explained, in part, how the programming code worked—by mimicking LivePerson's software to "inject millions of tracking and indexing markers into LivePerson's systems" which then could be mined through back-end reporting.  (FAC ¶¶ 32, 37, 40, 41.)

LivePerson also alleged that [24]7 acquired LivePerson's trade-secret information through contractual breaches.  Specifically, LivePerson pled the existence of two direct contracts between itself and [24]7, described the provisions requiring confidentiality, establishing limited permitted uses, and prohibiting reverse engineering, and even filed those agreements with the Court.  (FAC ¶¶ 28, 29.)  LivePerson further pled that all of its clients are required to execute license agreements that likewise impose confidentiality and use restrictions that are applicable to vendors such as [24]7 whom the clients employ.  (FAC ¶¶ 32-34.)  Finally, LivePerson pled that [24]7, in violation of these contractual obligations, "abused its access to LivePerson's back-end systems to observe, penetrate, and manipulate the operation of LivePerson's technology and download extensive data from LivePerson's servers in order to both interfere with LivePerson's

14

client relationships and to reverse engineer and copy LivePerson's technology."  (FAC ¶ 37.)
This degree of detail far exceeds what other courts have required in order to find a plausible
allegation of misappropriation.  *See*, *e.g.*, *Medtech*, 596 F. Supp. 2d at 787-90; *Ritani I*, 880 F.
Supp. 2d at 450-51; Servotec, 2011 WL 4736355 at *5; *Lapp*, 2011 WL 1198648 at *10.

### E.       LivePerson Pled A Valid Breach Of Contract Claim

A claim for breach of contract requires the pleading of facts giving rise to a plausible
inference of: "(1) the existence of a contract; (2) a breach of that contract; and (3) damages
resulting from the breach."  *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525
(2d Cir. 2004).  The First Amended Complaint satisfies these requirements.

#### 1.       LivePerson alleged the existence of a contract.

[24]7 admits that that it entered into contracts with LivePerson:  "Both of the parties'
contracts specify that New York law governs."  (Mem. at 14, n.2.)  LivePerson filed those
contracts under seal with the Court.  (FAC, Exs. A, B.)  And LivePerson also alleged the
existence of license agreements with its clients that contain obligations binding vendors like
[24]7.

[24]7, ignoring what LivePerson has pled, invents a heightened pleading requirement for
a breach of contract claim, insisting that LivePerson must allege the "present existence" of those
contracts and the specific "date of any supposed breach."  None of the case law upon which
[24]7 relies imposes such requirements.   Rather, [24]7 fabricates them up based on a
hypothetical statute-of-limitations defense.  (Mem. at 15.)  But plaintiffs have no obligation to
plead facts in anticipation of an affirmative defense.  *Spagnola v Chubb Corp.*, 574 F.3d 64, 73

(2d Cir. 2009); *Harris v. New York*, 186 F.3d 243, 251 (2d Cir. 1999) (no need to anticipate statute of limitations in complaint).[2]

In any event, [24]7's premature effort to inject a statute-of-limitations issue into the case fails for two other reasons.  First, the alleged termination of the Co-Marketing Agreement—which is rooted in an extrinsic document neither attached to nor referenced in the FAC—is not properly before the Court on a 12(b)(6) motion.  *Fuji Photo Film, U.S.A., Inc. v McNulty*, 669 F. Supp. 2d 405, 410 (S.D.N.Y. 2009).  Second, [24]7 has effectively conceded the "present existence" of the MSA within the limitations period, admitting, "[a]lthough [24]7 terminated the CMA almost seven years ago, the parties continued to serve joint customers thereafter under the MSA."  (Mem. at 3.)  Finally, the MSA—which *is* attached to the FAC—contains an express survival clause that gives continuing effect to the confidentiality and use limitations in the MSA even if it had been terminated.  (FAC at Ex. B, ¶ 23.)

> ## 2.      [24]7 breached the contracts numerous ways.

The FAC also contains dozens of factual allegations setting forth both the relevant contractual provisions and [24]7's breaches of them that are presently known.  (FAC ¶¶ 25-34 (identifying contractual obligations), 35-49 (identifying wrongful conduct), 76-77 (specifically identifying contract provisions breached by [24]7).)  In particular, paragraphs 47 and 48 explicitly refer to the use limitations put in place by the Co-Marketing Agreement, the MSA, and LivePerson's client license agreements to which [24]7 is subject as a vendor, all of which [24]7 breached.  In sum, LivePerson's allegations of breach more than satisfy the "plausibility" standard.  *See Braden v Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each

---

[2] This point also rebuts [24]7's contention that LivePerson was required to allege that it gave [24]7 an opportunity to cure its breaches.  (*See* Mem. at 16.)  [24]7 may plead that issue as a defense, but it may not dictate new pleading requirements under the Federal Rules of Civil Procedure.

allegation, in isolation, is plausible); *U1it4less, Inc. v. Fedex Corp.*, 906 F. Supp. 2d, 275, 286 n.8 (S.D.N.Y. 2012) (plausibility is based factual content of complaint "as a whole").

3.     LivePerson pled recoverable damages.

[24]7 would have this Court dismiss LivePerson's breach of contract claims (and all the others) because LivePerson did not identify by name "what 'clients and potential clients' were lost" or detail precisely how [24]7's conduct otherwise had damaged LivePerson.  (Mem. at 16.) Its sole support for the proposition that "[s]uch factual allegations are required to sustain the claim," (*id.*), is *Jinno International Co. v. Premier Fabrics, Inc.*, No. 12 Civ. 07820, 2013 U.S. Dist LEXIS 129745 (May 24, 2013).  But *Jinno,* an unpublished, not-appealed, never-cited District Court case, does not authoritatively establish a pleading standard; the Supreme Court did that in *Iqbal* and *Twombly*, and all they require is plausibility.  *See*, *e.g.*, *Twombly*, 550 U.S. at 570 (reaffirming *Swierkiewicz* and rejecting any requirement to allege "specific facts" beyond those needed to make a claim plausible).

In *Jinno* the court was confronted with a counterclaim that contained "only the following conclusory statement about damages:  'As a . . . result of Jinno's breach of agreements with Premier, Premier has suffered damages in a sum to be determined at trial.'"   2013 U.S. Dist LEXIS 129745 at *10.  The *Jinno* court then went on to suggest as an "example" a type of factual allegation that would have supported an inference of actual damage.  *Id.*  Here, LivePerson alleged, among other things, that it "already has lost or been notified of cancellation by major clients expressly due to 24/7's improper conduct" and that it "also has been informed by several clients that 24/7 actively is disparaging LivePerson's technology and services based on misrepresentation and misuse of LivePerson's confidential data, which 24/7 is not authorized to use for competitive purposes."  (FAC ¶ 50.)  LivePerson's express factual allegation of lost business creates a plausible inference of damages, and LivePerson has met its Rule 8 burden.

17

**F.    LivePerson Pled A Plausible Claim For Intentional Interference With Advantageous Existing Or Prospective Economic Relationships**

A claim for intentional interference with an existing or prospective economic relationship requires the pleading of facts giving rise to a plausible inference that: (1) the plaintiff had an existing or prospective business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).  The FAC meets all of these requirements.[3]

1.    LivePerson alleged interference By [24]7.

In its argument that LivePerson failed to alleged interference, [24]7 once again ignores the FAC's allegations as a whole to zoom in on a single phrase—"these clients and others"—and insist that names "are required" and that without such specificity, LivePerson "necessarily fails" to state a claim.  (Mem. at 17.)  In support of its argument, [24]7 inexplicably relies on an **unpublished Rule 56 summary-judgment case from 1997** to make pronouncements about what specific details "are required" to survive **a motion to dismiss** under *Iqbal* and *Twombly*.  (*See* Mem. at 17 (citing *All Am. Adjusters, Inc. v. Acceleration Nat'l Ins. Co.*, No. 96 CIV 9344, 1997 WL 732445 (S.D.N.Y. Nov. 25, 1997)).)

Contrary to [24]7's accusation, LivePerson did not make mere "generalized allegations of impairment."  (Mem. at 17.)  Rather, LivePerson alleged the existence of "numerous situations where 24/7 separately has been engaged by clients who use LivePerson technology in their call centers."  (FAC ¶ 34; *see also* FAC ¶¶ 36, 37, 81.)  LivePerson also alleged that "24/7 repeatedly has provided inaccurate business performance data regarding LivePerson to LivePerson's clients,

---

[3] [24]7 concedes that the first requirement has been pled.  (Mem. at 16.)

which (a) could not be produced without accessing LivePerson's confidential system data; and (b) differs significantly from LivePerson's business performance data shown when LivePerson technology is used by any of a dozen or so other outsourced call-center labor providers and/or client call-center employees."  (FAC ¶¶ 38, 83.)  In addition, LivePerson alleged that "24/7 intentionally has manipulated LivePerson's technology in client deployments, fabricated metrics regarding LivePerson's performance, or both, in order to create a false and misleading perception that, among other things, 24/7's technology is equivalent or superior to LivePerson's technology, and to create an artificial and inaccurate cost disparity between the two."  (FAC ¶¶ 38, 83.)  And LivePerson alleged that it has found, on its clients' websites, "24/7 programming code expressly designed to suppress the proper operation of LivePerson's technology, such as preventing live-chat sessions from being initiated, and/or eliminating LivePerson's "chat" button from appearing altogether."  (FAC ¶¶ 44, 83.)

Taking these allegations as true, as the Court must, there is no doubt that LivePerson has alleged actual relationships (and not mere hopes of relationships), known to [24]7 (which has been using LivePerson's software to provide services to those clients), and that [24]7 has intentionally interfered with LivePerson's relationships with those clients.

> 2.   LivePerson alleged improper interference with actual clients, not mere competition, and damages.

The New York Court of Appeals has held that the "wrongful means" that make for a viable interference claim "include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone . . ." *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1104 (N.Y. 2004).  Here, as quoted above, LivePerson alleged that [24]7 has manipulated or misrepresented LivePerson performance metrics to which [24]7 has access in order to create a false and misleading

impression of LivePerson's technology, (FAC ¶ 38).  Such conduct easily clears the threshold for alleging wrongful means.  *See*, *e.g.*, *N. State Autobahn, Inc. v. Progressive Ins. Grp.*, 928 N.Y.S.2d 199, 206-07 (N.Y. Sup. Ct. 2011) (denying summary judgment where defendant allegedly used "deceptive, misleading and untrue statements which disparaged plaintiff" to divert business); *DiCosomo v. Getzoff*, 2004 N.Y. Misc. LEXIS 3125, at *5-6 (N.Y. Sup. Ct. Apr. 8, 2004) (denying motion to dismiss where plaintiff pled "the making of false and misleading statements and [the conduct of] an anonymous and malicious smear campaign").

Moreover, as set forth above, LivePerson alleged actual reports from clients of [24]7's disparagement and actual lost clients owing to the disparagement.  (FAC ¶ 50.)  [24]7's reliance on *Ritani I* is misplaced, because there, unlike LivePerson, the plaintiff did not allege that the defendants' actions actually caused clients not to buy, and instead merely said "it is likely" the clients would have bought absent the interference.  880 F. Supp. 2d at 452.  LivePerson has pled its claim for tortious interference.

### G.    LivePerson's False Advertising Claim Under The Lanham Act Is Valid

[24]7 asserts in its motion that LivePerson has failed to plead a Lanham Act claim for false advertising because LivePerson supposedly has not identified a false statement of fact, alleged [24]7's false statements are material, or adequately pled damages.  (*See* Mem. at 19-22.) Once again, [24]7's argument completely misses the mark.  LivePerson has pled a claim for Lanham Act violations because [24]7's literally false statements about its "predictive engagement platform" being the "first" such technology are material and have damaged LivePerson.

LivePerson has pled [24]7 has made a literal false statement of fact "by falsely claiming to have developed the 'first' predictive or smart chat platform."  (FAC ¶ 98.)  This is not puffery.

As a court in this District has explained, "puffery" is "a statement about a product that is not capable of objective verification and is an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." *Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389, 2008 WL 563449, at *13 (S.D.N.Y. Feb. 21, 2008) (internal citations omitted). Here, [24]7 made a false statement that is capable of objective verification— either [24]7 was the first company to develop a predictive chat program, or it was not—and has not engaged in puffery.

A false claim of being "first" is material and actionable under the Lanham Act. *See Basile Baumann Prost Cole & Assocs., Inc. v. BBP & Assocs. LLC et al.*, 875 F. Supp. 2d 511, 522, 530 (D. Md. 2012) (holding false statement that defendant had accomplished number of "firsts" in industry was one of several actionable misrepresentations and denying summary judgment). Moreover, [24]7's statement that it was the "first" company to develop predictive engagement technology is particularly material and offensive here, where [24]7 has stolen, reverse-engineered, and re-packaged LivePerson's technology and is now asserting to LivePerson's clients that [24]7 is offering technology that is a "first,"—*i.e.* implicitly different from and better than the live engagement technology [24]7 stole from LivePerson.   Finally, "materiality is generally a question of fact for the jury," and "is not a basis for summary judgment," let alone dispositive at the pleading stage. *Id.* at 530.

[24]7's assertions that LivePerson failed to plead customer confusion or damages are similarly baseless.   LivePerson has pled in multiple places in its FAC precisely how it was injured by [24]7's misconduct, including its disparagement of LivePerson's technology: LivePerson lost actual customers to [24]7 and has been informed by other customers that they are terminating their relationship with LivePerson and moving their business to [24]7.  (FAC ¶¶

21

50-51, 100.)  Moreover, the Second Circuit has recently held that in a false advertising case—like this one—where the parties are direct competitors in market with few players, injury and consumer confusion "may be presumed and support awarding both injunctive relief and monetary damages," if the plaintiff proves "literal falsity and willful, deliberate deception," as LivePerson asserts here.  *Merck Eprova AG v. Gnosis S.p.A.*, __F.3d__, 2012 WL 3715078, at *12 (2d Cir. July 29, 2014).  It makes no difference that LivePerson's and [24]7's customers may be sophisticated, [24]7's intentional literal false statements are actionable.  *See Merck Eprova AG v. Brookstone Pharm.*, LLC, 920 F. Supp. 2d 404, 420-21 (S.D.N.Y. 2013) (holding presumptions of confusion and injury apply to intentional deceptions employing literal falsehoods, even where consumers are sophisticated).

LivePerson has pled [24]7 has knowingly issued false advertisements containing literal falsehoods and that LivePerson "has suffered and continues to suffer the loss of clients and potential clients…and devaluation of its live-interaction and predictive analytics technology" as "a direct and proximate result of" [24]7's false statements.  (FAC ¶ 46, 98, 100.)  LivePerson has sufficiently pled a Lanham Act claim for false advertising under 28 U.S.C. § 1125(a).

### H.    LivePerson Pled A Plausible Claim For Unfair Competition

A claim for unfair competition requires the pleading of facts giving rise to a plausible inference that the defendant, acting in bad faith, misappropriated the plaintiff's labor and expenditures to gain a commercial advantage or maliciously interfered with the plaintiff's good will.  *Ritani II*, 970 F. Supp. 2d at 258 (Sweet, J.); *Kwan v Schlein*, 441 F. Supp. 2d 491, 502 (S.D.N.Y. 2006).  Ironically, in a scant four lines of cursory text, [24]7 accuses LivePerson of offering only "conclusory allegations" and "unsupported legal conclusions" and on that basis seeks dismissal of LivePerson's entire claim.  (Mem. at 22.)

22

As detailed above, the FAC is rife with detailed allegations of improper acts undertaken by [24]7 in an effort to wrongfully obtain and exploit LivePerson's labor and expenditures in developing its technology and to maliciously interfere with LivePerson's technology and goodwill.  These acts include embedding spyware code on LivePerson's clients' websites to reverse engineer LivePerson's proprietary behavioral analytics and predictive targeting functionalities, injecting millions of tracking markers into LivePerson's systems to facilitate unauthorized data mining, manipulating LivePerson's software on client deployments to reduce its performance, and deploying software code designed to suppress the proper operation of LivePerson's technology.  (FAC ¶¶ 37-44.)

LivePerson also clearly alleged that [24]7 did these wrongful acts in order to gain the commercial advantages of avoiding millions of dollars and years of research and development costs, while simultaneously creating a false and misleading market perception of the cost and performance of running LivePerson's technology.  (FAC ¶¶ 35, 38.)  LivePerson further alleged that this conduct has resulted in the loss of major clients.  (FAC ¶ 50.)  The Court should sustain LivePerson's claim for unfair competition.

## I.      LivePerson Is Entitled To Plead And Has Pled A Valid Unjust Enrichment Claim

Finally, a claim for unjust enrichment requires the pleading of facts giving rise to a plausible inference: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  LivePerson has done so here.

Taken as a whole, the FAC alleges in great detail that [24]7 improperly obtained LivePerson's intellectual property and confidential information and used them to develop a competing product.  (FAC ¶¶ 35-44.)  That alone creates a plausible inference for each of the

23

elements of an unjust enrichment claim.   There is no requirement, such as [24]7 attempts to invent, that LivePerson plead [24]7 sold its product to particular, named LivePerson clients who otherwise would have ordered services from LivePerson.  (Mem. at 23.)  Indeed, [24]7 would be unjustly enriched by its theft of LivePerson's intellectual property even if it sold to an entirely different client base.  But even if such a requirement existed, LivePerson would have satisfied it here with its allegation that actual, existing LivePerson clients had terminated their agreements with LivePerson in favor of [24]7.  (FAC ¶ 50.)

Nor does LivePerson's unjust enrichment claim fail at the pleading stage simply because LivePerson also pled a breach of contract claim.   "While a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories."  *DeWitt Stern Grp., Inc. v. Eisenberg*, ___ F. Supp. 2d ___, 2014 WL 1388652, at *5 (S.D.N.Y. Apr. 9, 2014) (Sweet, J.).  Moreover, [24]7 has denied the existence or enforceability of those contracts, and thus demonstrates precisely why an unjust-enrichment claim is proper here.   And [24]7's contention, without citation, that LivePerson "must identify the acts constituting unjust enrichment that fall outside the scope of the contracts" is just one more example of [24]7's willful disregard of federal notice pleading standards. (Mem. at 23.)   LivePerson's unjust-enrichment claim is plausible and LivePerson should be allowed to proceed with it.

### III.   IF THE COURT CONCLUDES THAT ANY OF LIVEPERSON'S CLAIMS LACKS SUFFICIENT DETAIL, LIVEPERSON RESPECTFULLY REQUESTS LEAVE TO AMEND

As set forth above, LivePerson believes that its FAC contains sufficient factual allegations to support each of the claims set forth therein.   If the Court disagrees, then LivePerson respectfully requests the opportunity to amend and remedy whatever deficiency the Court finds.  The Second Circuit has made clear that, when a motion to dismiss is granted, "the

24

usual practice is to grant leave to amend the complaint." *Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991).   Indeed, "[g]ranting leave to amend is especially appropriate when a complaint is dismissed for lack of specificity," as [24]7 (wrongfully) asserts in their case here. *In re ITT Corp. Derivative Litig.*, 588 F. Supp. 2d 502, 515 (S.D.N.Y. 2008).   The Court should grant LivePerson leave to amend.

## CONCLUSION

For the foregoing reasons, LivePerson respectfully requests that this Court deny [24]7's Motion to Dismiss.

Dated:  August 29, 2014

/s/ Sandra C. McCallion

Mark S. Cohen
mcohen@cohengresser.com
Sandra C. McCallion
smccallion@cohengresser.com
**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Fax: (212) 957-4514

J. Michael Huget (MI P39150)
mhuget@honigman.com
Jeffrey K. Lamb (MI P76738)
jlamb@honigman.com
Roger P. Meyers (MI P73255)
rmeyers@honigman.com
**HONIGMAN MILLER SCHWARTZ AND COHN LLP**
130 S. First Street, 4th Floor
Ann Arbor, MI 48104
Telephone: (734) 418-4200
Fax: (734) 418-4257
*Attorneys for Plaintiff*

25