UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIVEPERSON, INC.,<br><br>     Plaintiffs,<br><br> vs.<br><br>24/7 CUSTOMER, INC.,<br><br>     Defendants. | Case No. 14-CV-01559-RWS |

**LIVEPERSON, INC.'S RESPONSE TO
24/7 CUSTOMER, INC.'S MOTION FOR A PROTECTIVE ORDER**

   Pursuant to the Court's April 6, 2015 Order and Local Rule 6.1, Plaintiff LivePerson, Inc. ("LivePerson") hereby submits its response to Defendant 24/7 Customer, Inc.'s ("24/7") motion for a protective order filed April 1, 2015. (Dkt. #61.)  The protective order is a fundamental document that will govern the parties' discovery efforts during the next 21 months.  24/7 seeks to impose four unfairly one-sided restrictions on LivePerson, its experts and consultants, and its counsel via 24/7's proposed protective order in order to hamper LivePerson's ability to prosecute its claims.

   *First*, 24/7 proposes to bar LivePerson from retaining experts or consultants employed by 24/7's "competitors" without describing or identifying the relevant competitors with any particularity as LivePerson has repeatedly requested.

   *Second*, 24/7 demands without cause that LivePerson must identify both its testifying experts as well as its non-testifying consultants at the start of discovery and then move the Court to confirm the expert's bona fides after 24/7's inevitable objection and before the expert may begin meaningful work.

16977553.4

***Third***, 24/7 unnecessarily insists on immediately imposing extremely restrictive, unduly burdensome, and expensive limitations on the production and review of "source" computer code.

***Finally***, despite the absence of any patent claims in this case, 24/7 seeks to impose a prosecution bar based on LivePerson's lawyers' potential "indirect" involvement in patent prosecution at their firm.

For the reasons discussed herein, the Court should deny 24/7's motion, order the parties to confer regarding a mutually agreeable definition of "competitor" and enter LivePerson's proposed Protective Order attached as Exhibit A.

## I. THE PARTIES SHOULD CONFER AND AGREE REGARDING A DEFINITION OF "COMPETITORS" IN ORDER TO ELIMINATE AMBIGUITY AND AVOID FURTHER DISPUTES ABOUT THE EXPERTS THEY RETAIN

24/7's proposed protective order would bar LivePerson from retaining experts or consultants employed by 24/7's "competitors" without describing or identifying the relevant competitors with any particularity. (*See* Dkt. #61, Ex. A, ¶ 2.7.) 24/7's proposal is vague and ambiguous and will undoubtedly result in additional disputes during expert discovery in this litigation. LivePerson has repeatedly requested that 24/7 confer with LivePerson regarding a mutually acceptable definition of "competitor," including specific examples of the relevant competitors at issue, but 24/7 has been unwilling to engage in such a discussion. The Court should order 24/7 to confer with LivePerson to develop a definition of "competitor" that adequately protects each party's concern that its confidential information will end up in its competitor's hands while also providing clarity for the parties as to which experts they may retain without facing a bar on their use at trial.

## II. 24/7'S PROPOSAL FOR ADVANCE NOTICE AND CERTITFICATION OF EXPERTS AND CONSULTANTS UNNECESSARILY INFRINGES UPON RULE 26 AND THE WORK-PRODUCT PRIVILEGE

2

16977553.4

24/7's proposed protective order would improperly require LivePerson to prematurely disclose identifying information[1] about its testifying experts, disclose the identity of its non-testifying consultants and seek and receive the court's approval of those experts' qualification before they would be allowed to review any information 24/7 has designated "attorney's eyes only." (*See* Dkt. #61, Ex. A, ¶ 7.4.) 24/7's proposal contradicts both the timing for expert disclosure set by Fed. R. Civ. P. 26(a)(2)(D) and, as it applies to consulting experts, infringes upon LivePerson's work-product privilege. *See, e.g.*, Fed. R. Civ. P. 26(b)(4)(D); *see also Ager v. Jane C. Stormont Hospital and Training School for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980); *see also Dover v. British Airways, PLC (UK)*, No. CV 2012-5567, 2014 WL 4065084, at *1 (E.D.N.Y. Aug. 15, 2014) ("[Rule 26(b)(4)(D)] protects the identity of a non-testifying expert from disclosure.").

24/7 has not provided a single concrete example of specific discovery material that is actually—or potentially—at issue in this case that justifies this vast departure from Rules 26(a)(2) and 26(b)(4), and cannot meet its burden to show good cause for entry of its proposed "advance notice" provision.[2] *See, e.g.*, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186, 187 (S.D.N.Y. 2014) (holding good cause exists only if party can show a clearly defined, serious, and specific injury from disclosure). Moreover, the burden of 24/7's proposed procedure falls disproportionately on LivePerson, as it will need to begin expert work

---

[1] 24/7's proposed protective order would require each party to disclose its expert's full name, city and state of residence, current resume, current employer(s) and any litigation in which the expert offered testimony during the preceding five years. (Dkt. #61, Ex. A, ¶ 7.4.) After disclosing this information, the party must then wait seven days to give its adversary time to object to disclosure to the expert and then move the Court for approval of the expert or consultant's bona fides after the opposing party inevitably objects. *Id.*

[2] This Court has approved of similar "advance notice" procedures where the parties ***stipulated*** to such provisions, but there is no such stipulation here. *See, e.g.*, *Panasonic Corp. v. Plus Supply Int'l*, No. 1:10-cv-07217, Dkt. #14 (S.D.N.Y. Oct. 21, 2010); *Burkina Wear, Inc. v. Campagnolo S.R.L.*, No. 1:07-cv-03610, Dkt. #22-4 (S.D.N.Y. Mar. 25, 2008).

3

early in the case to prepare to meet its burden of proof. 24/7, by contrast, can lie in wait for more than a year with undisclosed rebuttal experts and consultants.

Not only is the "advance notice" provision unduly restrictive, it is simply unnecessary. Numerous courts have held that procedures other than "advance notice" can adequately protect a party's highly confidential information. For example, in *Gerawan Farming, Inc. v. Townsend & Townsend & Crew LLP*, the court held that if an expert certifies that he is not a competitor, a party is not required to give advance notice of the disclosure of information to the expert. No. 1:10-cv-02011, 2011 WL 4440188, at *3 (E.D. Cal. Sept. 23, 2011) (also rejecting proposal that a party be required to disclose its expert's "Agreement to be Bound"). In a very recent case, another court held that certifying that an expert is not a current or past employee of a competitor, along with the expert's signing of an "Agreement to be Bound," were sufficient to protect the parties' trade secrets. *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984, 2015 WL 433481, at *3-4 (N.D. Cal. Feb. 2, 2015). The court agreed that providing advance notice of the identity of anyone the parties may consult potentially invaded the attorney work-product doctrine and removed plaintiffs' ability to have non-disclosed consulting experts. *Id.*; *see also Gerawan Farming*, 2011 WL 4440188, at *3 ("[Disclosure of an "Agreement to be Bound"] implicates the attorney work product. . .").

As in *Gerawan* and *Todd*, LivePerson's proposed protective order in this case will preclude either party from hiring an expert or consultant who is a past or present employee of a competitor, and will also require the expert or consultant to sign an "Agreement to be Bound." 24/7's overly restrictive advance notice provisions are simply not necessary to protect the parties' interests.

4

24/7's attempt to force LivePerson to disclose the identity of its non-testifying consultants is directly contrary to Rule 26(b)(4), and this Court recently held that the identities of consulting experts are not discoverable.  *See Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 121-23 (S.D.N.Y. 2014)(quashing subpoena directed at non-testifying consultant and holding "[p]laintiffs are not entitled to discover the identity of . . . a consulting expert.") ; *see also Dover*, 2014 WL 4065084, at *1 (citing *Williams*).

24/7's purported authorities are inapposite.  In *Gerffert Co. v. Dean*, the court granted the notice provision only after noting that "problems in this case . . . have already occurred with respect to confidences and secrets." No. 09 cv 266, 2012 WL 2054243, at *5 (E.D.N.Y. June 6, 2012). In *Rywkin v. New York Blood Center* and *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, the courts approved "advance notice" provisions in response to concerns about disclosure to a party's competitor(s). *Rywkin*, No. 95 Civ. 10008, 1999 WL 435242, at *1 (S.D.N.Y. June 25, 1999); *Bank of New York*, 171 F.R.D. 135, 145 (S.D.N.Y. 1997). But here, both parties are amenable to a protective order that forbids the engagement of experts or consultants employed by their competitors. Therefore, the "exceptional circumstances" that justified an advance notice provision in *Rywkin* and *Bank of New York* are absent here, and the Court should reject this unnecessary and burdensome restriction.  *See Bank of New York*, 171 F.R.D. at 145; Fed. R. Civ. P. 26 (b)(4)(D)(ii).

**III.    24/'S PROPOSED UNDULY RESTRICTIVE SOURCE CODE PROVISIONS ARE PREMATURE AT THIS EARLY STAGE OF DISCOVERY**

24/7 also seeks to impose extensive procedures governing the production and review of source code. (*See* Dkt. #61, Ex. A, ¶ 8.) These provisions are premature at the outset of discovery, and may not be necessary at all given at least some, and perhaps most, of 24/7's source code potentially at issue may have been publicly viewable at the relevant times.

16977553.4

LivePerson requests that the Court delay entry of a protective order governing source code for 60 days, until the parties have a better understanding of the source code at issue in this case and the opportunity to confer with their experts regarding source code. Delaying resolution of this issue for 60 days—when discovery does not close for 21 months—should result in a protective order tailored to the specific issues in this case without unduly prejudicing either party or impacting the case schedule. Other federal courts have rejected a party's premature unilateral attempt to impose overly restrictive provisions for source code and directed the parties to confer, precisely as LivePerson seeks here. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 13 C 6312, 2014 WL 1365508, at *1-2 (N.D. Ill. Apr. 7, 2014). This Court should do the same.

24/7 cites three cases in support of its proposed premature and unduly restrictive source code provisions. (*See* Dkt. #61 at 4.) But in each of those cases the parties ***stipulated*** to most, if not all, of the source code provisions. *See, e.g.*, *Rensselaer Polytechnic Institute v. Apple, Inc.*, No. 1:13-cv-0633, 2014 WL 1871866, at *1, 3-4 (N.D.N.Y. May 8, 2014) (discussing plaintiff's motion requesting modification of the stipulated protective order); *Protegrity Corp. v. Epicor Software Corp.*, No. 3:13-cv-1781, 2014 WL 3864899, at *4, 4 n.5 (D. Conn. Aug. 6, 2014) (noting that parties largely agreed on the provisions governing production of source code, and that the only remaining disputes involved control of the secure computer on which source code was produced and the limitation on printing); *GM Network Ltd. v. E-Gold Ltd.*, No. 01 Civ. 9621, 2002 WL 1013320, at *1-3 (S.D.N.Y. May 17, 2002) (finding that the terms in the Stipulated Protective Order were reasonable and declining plaintiffs' request that their expert and counsel be allowed to copy defendants' source code).

24/7's cases perfectly illustrate LivePerson's concern. In each, the parties agreed to restrictive provisions governing the production of source code early in the litigation, and disputes

later arose that required the courts' intervention. Here, LivePerson is objecting at the outset that the provisions are improper and likely to result in future discovery disputes. It is thus even ***more*** likely that a discovery dispute will arise than in cases where the parties initially agreed to the provisions. Therefore, the Court should postpone entry of a protective order governing source code discovery until the parties have a better understanding of the issues.[3]

## IV. 24/7'S PROPOSED PROSECUTION BAR IS VAGUE AND OVERLY BROAD

Contrary to 24/7's erroneous assertion, LivePerson did not completely reject a patent prosecution bar provision. LivePerson is amenable to a reasonable patent prosecution bar restriction that prevents those lawyers who ***actually*** prosecute patents or other intellectual property protections from receiving access to 24/7's highly confidential information. (*See* Ex. A, ¶ 9.) LivePerson only objects to 24/7's provision because it would bar counsel's "indirect" involvement in patent prosecution, particularly as this proposal is unfairly one-sided in this case.[4]

The party seeking a prosecution bar has the burden of showing good cause for its imposition, including that there is a risk of "inadvertent disclosure" of confidential information. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378, 1381 (Fed. Cir. 2010); *see also Chiesi USA, Inc. v. Sandoz Inc.*, 41 F. Supp. 3d 417, 423-25, 423 n.5 (D.N.J. Aug. 21, 2014); *Icofind, Inc. v. Google, Inc.*, No. 11-0319, 2011 WL 3501348, at *4-5 (E.D. Cal. Aug. 9, 2011).

---

[3] LivePerson also notes that even though it is only asking that resolution of this issue be postponed, courts have outright rejected protective orders with similarly restrictive procedures. *See, e.g.*, *Bergstrom, Inc. v. Glacier Bay, Inc.*, No. 08 C 50078, 2010 WL 257253, at *1-2 (N.D. Ill. Jan. 22, 2010) ("[Defendant's] suggestion that [plaintiff] view the source code on a laptop is overly burdensome . . . . Although it appears that this method of producing source codes [sic] is used by parties in patent infringement cases on occasion, it is not appropriate under the circumstances here."); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, Nos. 05 C 4120, 05 C 5164, 2011 WL 148252, at *12-13 (N.D. Ill. Jan. 18, 2011) ("Defendants have failed to show that the kind of labyrinthian procedures they propose for handling source code are needed here.").

[4] As noted in LivePerson's April 2, 2015 letter, 24/7's vague and amorphous proposal is unfairly one-sided, as LivePerson's lead litigator's firm regularly performs intellectual property prosecution work for LivePerson, and 24/7's litigation counsel apparently does not perform similar work for 24/7. (Dkt. #64 at 2.)

To establish a risk of inadvertent disclosure, the party must present sufficient facts to demonstrate that counsel are involved in "competitive decisionmaking" for their client. *Deutsche Bank*, 605 F.3d at 1378-80; *Iconfind*, 2011 WL 3501348, at *2. The Federal Circuit defines "competitive decisionmaking" as "shorthand for counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984); *Deutsche Bank*, 605 F.3d 1378-79.

The Federal Circuit explicitly held that not all patent prosecution attorneys are involved in competitive decision-making. *Deutsche Bank*, 605 F.3d at 1378-79. The court continued by noting certain attorneys to whom disclosure of confidential material poses little risk:

> Some attorneys involved in patent litigation, for example, may have patent prosecution duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements. Similarly, some attorneys may be involved in high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings, but have no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios. There is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation.

*Id.* at 1379-80. If a court concludes that there is a risk of inadvertent disclosure, it must then balance this risk against the harm to the opposing party from restrictions on that party's right to counsel of its choice. *Id.*; *see also Chiesi USA*, 41 F. Supp. 3d at 424-25. The party seeking the bar must show that (1) the information designated to trigger the bar; (2) the scope of activities prohibited by the bar; (3) the duration of the bar; and (4) the subject matter covered by the bar reasonably reflect the risk of inadvertent disclosure. *Deutsche Bank*, 605 F.3d at 1381.

Here, the scope of activities prohibited by 24/7's proposed bar does not reasonably reflect the risk of inadvertent disclosure. Specifically, LivePerson opposes 24/7's attempt to bar anyone with "indirect" involvement[5] in patent prosecution activities. (*See* Dkt. #61, Ex. A, § 9.1.)

As an initial matter, it is entirely unclear what actions would qualify as "indirect" prosecution. To the extent it can be understood, "indirect" prosecution could include reporting office actions, filing ancillary paperwork, staffing projects, or coordinating client meetings. But the Federal Circuit explicitly held that such "indirect" prosecution activities posed "little risk" of inadvertent disclosure. *See Deutsche Bank*, 605 F.3d at 1379-80. Thus, not only does the vagueness associated with barring "indirect" prosecution leave room for mischief, the term would also encompass numerous activities that the Federal Circuit has held pose little risk. 24/7 has not met its burden of showing that the expansive bar provisions are justified by such low risk activities. Therefore, the Court should strike "indirectly" from 24/7's proposed protective order, and instead adopt LivePerson's proposal, which adequately protects the parties by prohibiting *direct* prosecution activities by those accessing confidential information. (*See* Ex. A ¶ 9.)

## V.    CONCLUSION

24/7 has not met its burden to show good cause for the unduly restrictive protective order provisions it seeks to impose.  The Court should order the parties to meet and confer to develop a mutually agreeable definition of **"competitor"** and enter LivePerson**'**s proposed protective order attached as Exhibit A.

---

[5] 24/7's definition of "prosecution" includes: "directly *or indirectly* advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of applications, specifications, claims, and or responses to office actions, or otherwise affecting the disclosure in patent applications or specification or the scope of claims in patents or patent applications, whether in original prosecution, reissue, reexamination, inter partes review, or post-grant review." (Dkt. #61, Ex. A ¶ 9.1 (emphasis added).)

Dated:  April 13, 2015

By: /s/ Jeffrey K. Lamb

Mark S. Cohen
mcohen@CohenGresser.com
Daniel H. Tabak
dtabak@CohenGresser.com
**COHEN & GRESSER LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Fax: (212) 957-4514

J. Michael Huget (MI P39150)
mhuget@honigman.com
Sarah E. Waidelich (SW4988)
swaidelich@honigman.com
HONIGMAN MILLER SCHWARTZ AND COHN LLP
130 S. First Street, 4th Floor
Ann Arbor, MI 48104
Telephone: (734) 418-4200
Fax: (734) 418-4257

Jeffrey K. Lamb (MI P76738)
jlamb@honigman.com
Roger P. Meyers (MI P73255)
rmeyers@honigman.com
Andrew W. Clark (MI P79165)
aclark@honigman.com
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Ave.
2290 First National Bldg.
Detroit, MI 48226

16977553.4