UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

LIVEPERSON, INC.,

                Plaintiff,

       - against -

24/7 CUSTOMER, INC.,

                Defendant.

------------------------------------------X

14 Civ. 1559 (RWS)

<u>OPINION</u>

A P P E A R A N C E S:

        Attorneys for Plaintiff

        COHEN & GRESSER LLP
        800 Third Avenue
        New York, New York 10022
        By:  Mark S. Cohen, Esq.
            Daniel H. Tabak, Esq.

        HONIGMAN MILLER SCHWARTZ AND COHN LLP
        130 S. First Street, 4th Floor
        Ann Arbor, MI 48104
        By:  J. Michael Huget, Esq.
            Sarah E. Waidelich, Esq.

        HONIGMAN MILLER SCHWARTZ AND COHN LLP
        660 Woodward Ave, 2290 First National Bldg.
        Detroit, MI 48226
        By:  Jeffrey K. Lamb, Esq.
            Roger P. Meyers, Esq.
            Andrew W. Clark, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/30/15

Attorneys for Defendant

O'MELVENY & MYERS, LLP
7 Times Square
New York, NY 10036
By:  Carolyn S. Wall, Esq.

O'MELVENY & MYERS, LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
By:  George A. Riley, Esq.
     Mark E. Miller, Esq.
     David Eberhart, Esq.
     Susan Roeder, Esq.
     Elysa Q. Wan, Esq.

**Sweet, D.J.**

Pending before the Court are two discovery-related motions made by defendant 24/7 Customer, Inc. ("[24]7" or "Defendant") and opposed by plaintiff Liveperson, Inc. ("Liveperson" or "Plaintiff").  The first is for inclusion of Defendant's proposed provisions into a draft protective order governing discovery in this litigation (the "Proposed Protective Order" or "PPO").[1]  The second seeks an order compelling Plaintiff to produce a deponent pursuant to Rule 30(b)(6) to testify on Plaintiff's behalf regarding a number of the allegations made it its complaint (the "30(b)(6) Deposition").  Based upon the conclusions set for below, Defendant's provisions as modified below are incorporated into the PPO and Defendant's motion to compel is denied.

**Prior Proceedings**

A detailed recitation of the facts of the underlying case is provided in this Court's opinion dated January 16, 2015, which addressed Defendants' motion to dismiss the First Amended

---

[1] A copy of Defendant's draft of the PPO is available as Exhibit A to Letter to the Court from Carolyn S. Wall, dated April 1, 2015 (hereinafter "Wall April 1 Ltr.").  This Opinion will designate citations to the PPO provisions as reflected in Exhibit A of the Wall April 1 Ltr. as "PPO ¶ __".

Complaint.  See LivePerson, Inc. v. 24/7 Customer, Inc., No. 14
CIV. 1559 RWS, 2015 WL 249329, at *1 (S.D.N.Y. Jan. 16, 2015).
Familiarity with those facts is assumed.

      With respect to the PPO, the parties submitted a
revised joint discovery plan to the Court on March 4, 2015.
That revised joint discovery plan requires the parties to
confer, agree to, and file a proposed protective order governing
the production of confidential information, a protocol for the
collection, review, and production of electronically-stored
information, including software code, and a "clawback" agreement
governing the return or disposal of any inadvertently produced
privileged information, by March 18, 2015.  Though the parties
have reached several significant agreements, including a joint
ESI protocol approved by the Court on April 2, 2015, the parties
remain unable to reach agreement on three topics: (1) procedures
enabling a party to object before its sensitive information is
disclosed to an individual retained as an expert or consultant
by the opposing party (the "Expert Disclosure Provision"); (2)
procedures for the production and review of source code (the
"Source Code Provisions"); and (3) a patent prosecution bar (the
"Patent Prosecution Bar").  Defendant requests that this Court
incorporate its proposed provisions into PPO which will govern
this case.

With respect to the 30(b)(6) deposition, [24]7 served on Liveperson a notice of deposition for March 31, 2015.  The topics in that notice generally seek to identify the bases for various allegations in the operative complaint.  Liveperson replied by letter dated March 16, 2015, objecting to the deposition.  Liveperson characterizes the deposition as an attempt to invade its attorney work product and as a form of contention discovery that must await conclusion of the discovery.  Defendant asks that Plaintiff be compelled to produce 30(b)(6) a deponent.

**Proposed Protective Order – Expert Disclosure Provision**

Defendant seeks an Expert Disclosure Provision that would require disclosure of the identity of non-testifying experts that will be granted access to highly confidential data. Plaintiff contends that the Rule 26 of the Federal Rules of Civil Procedure prohibits this provision.

Rule 26 draws a distinction between the discoverabllility of testifying and non-testifying experts.  Rule 26(b)(4)(D) states, in relevant part:

> Ordinarily, a party may not, by
> interrogatories or deposition, discover
> facts known or opinions held by an expert
> who has been retained or specially employed
> by another party in anticipation of
> litigation or to prepare for trial and who
> is not expected to be called as a witness at
> trial [unless as provided under Rule 35(b)
> or the party shows "exceptional
> circumstances."].

Some courts, though not all, have read this discovery limitation

as applying not only to facts and opinions, but also to the

identity of non-testifying experts.  See Williams v. Bridgeport

Music, Inc., 300 F.R.D. 120, 122 (S.D.N.Y. 2014) (Rule 26

precludes from discovery of the identity of an informal

consulting expert); Dover v. British Airways, PLC (UK), No. CV

2012-5567 RJD MDG, 2014 WL 4065084, at *1 (E.D.N.Y. Aug. 15,

2014) aff'd, No. 12 CV 5567 RJD MDG, 2014 WL 5090021 (E.D.N.Y.

Oct. 9, 2014) (same); Ager v. Jane C. Stormont Hospital and

Training School for Nurses, 622 F.2d 496, 500-01 (10th Cir.

1980) (same); MacGillivray v. Consolidated Rail Corp., Civ. A.

No. 91-0774, 1992 WL 57915, at *3 (E.D.Pa. March 17, 1992)

(same); Arco Pipeline Co. v. S/S Trade Star, 81 F.R.D. 416, 417

(E.D.Pa. 1978) (same); but see Convolve, Inc. v. Compaq Computer

Corp., No. 00 Civ.5141 (GBD) (JCF), 2004 WL 1944834, at *1

(S.D.N.Y. Sept. 1, 2004) (Rule 26(b)(4)(D) does not apply to

extend to the identity of a non-testifying expert); Manzo v.

Stanley Black & Decker, Inc., 2015 WL 136011, *2 (E.D.N.Y.

January 9, 2015) (same); In re Welding Fume Products Liab.
Litig., 534 F. Supp. 2d 761, 767 (N.D. Ohio 2008) (same);
Biovail Corp. Int'l v. Hoechst Aktiengesellschaft, 1999 WL
3354801 (D.N.J. Nov. 13, 1999) (same); Baki v. B.F. Diamond
Const. Co., 71 F.R.D. 179, 182 (D. Md. 1976) (same).


     This Court concludes a non-testifying expert's
identity is protected from discovery absent a showing of
exceptional circumstances.  See Williams, 300 F.R.D. at 122; see
generally § 2032 Expert Witnesses—Discovery as to Specially-
Retained Experts Who Will Not Be Called, 8A Fed. Prac. & Proc.
Civ. § 2032 (3d ed.) ("A threshold question is whether [Rule
26(b)(4)(D)] forbids routine discovery even of the identity of
consulting experts absent exceptional circumstances. . . .  The
Tenth Circuit [has held] that the "proper showing" required to
obtain the identity of consulting experts is a showing of
exceptional circumstances that would justify discovery of these
persons' facts and opinions. . . .  [T]he Tenth Circuit's
approach has become predominant among courts.").


     Defendant's contention that Rule 26(b)(4)(D)'s
disclosure limitations apply only to discovery requests is
unconvincing.  See Def.'s Reply Mem. 2-4.  The work product
implications are similar regardless of whether an expert's

identity is revealed in response to a discovery demand or in
response to the Expert Disclosure Provision to which Plaintiff
has not acceded.  See Todd v. Tempur-Sealy Int'l, Inc., No. 13-
cv-04984, 2015 WL 433481, at *4 (N.D. Cal. Feb. 2, 2015) (noting
a protective order provision similar to the Expert Disclosure
Provision here "potentially invades the attorney work product
doctrine and removes Plaintiffs' ability to have non-disclosed
consulting experts").  Consequently, a showing of exception
circumstances is necessary for imposition of the Expert
Disclosure Provision.

     By the terms of the PPO, the Expert Disclosure
Provision applies where a party seeks to provide a non-
testifying expert with "information or items" designated as
"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY
CONFIDENTIAL – SOURCE CODE" (hereinafter "Highly Confidential
Information").  See PPO ¶¶ 7.2, 7.4.  The PPO defines Highly
Confidential Information, in relevant part, as:

> [E]xtremely sensitive "CONFIDENTIAL
> Information or Items," disclosure of which
> to another Party or Non-Party would create a
> substantial risk of serious harm that could
> not be avoided by less restrictive means,
> including without limitation technical
> documentation such as schematics, block
> diagrams, technical manuals, service
> manuals, and other highly sensitive

6

> technical information; and further including
> without limitation competitively sensitive
> information such as business plans or
> strategies, marketing plans or strategies,
> product development or design information,
> financial information (including without
> limitation sales, revenue, profit and loss
> information), and information subject to
> confidentiality obligations to customers of
> the Parties, [including such information]
> that comprises computer source code (e.g.,
> C++ code) . . . [that] does not include
> descriptions or summaries of the Designated
> Code, design specifications, schematics,
> flow charts, or block diagrams, nor shall it
> include materials that appear in user
> manuals, technical manuals, service manuals,
> presentations, or similar documents.

See PPO ¶¶ 2.8-2.9.  Based on the definition of the information

triggering the Expert Disclosure Provision, injury may arguably

be sufficiently definite, serious, and specific to warrant

imposition of the Expert Disclosure Provision.  See Pl.'s Mem.

in Opp'n 3 (contending that the Expert Notice Provision must be

justified by a "clearly defined, serious, and specific injury

from disclosure"); see also Biovail, 1999 WL 3354801 at *8

(evaluated under an "exceptional circumstances" standard, the

"highly proprietary nature of the information which is at stake

in this case" required that "at a minimum . . . it is only

appropriate that each side know at least the identify of an

expert before the information covered by the Protective Order is

provided."); Rywkin v. New York Blood Center, 1999 WL 435242, *1

(S.D.N.Y) (approving advance notice provisions); Bank of New

York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 145 (S.D.N.Y. 1997) (same).  However, Defendant has not adequately argued exception circumstances beyond the general assertion that "at stake is extremely sensitive and confidential business information that, if disclosed to a competitor, would be unduly harmful for either party."  See Def.'s Reply Mem. 4.

Moreover, the Court is persuaded by Plaintiff's contention that procedures less potential intrusive with respect to the work product doctrine can serve to protect Highly Confidential Information from disclosure.  The PPO defines an expert in relevant part as a person with specialized knowledge who "is not a current employee of a Party or a past employee of another Party, . . . at the time of retention, is not anticipated to become an employee of a Party, and . . . is not a current employee or a current consultant of a Party's competitor."  PPO ¶ 2.7.  The PPO further requires each expert to execute an "Agreement to Be Bound" by the terms of the PPO prior to receiving access to Highly Confidential Information, which includes the definitional limitation on who can serve as an expert found in PPO ¶ 2.7.  See PPO ¶ 7.2 , PPO Ex. A.

In the interest of further safeguarding the Highly Confidential Information, current PPO ¶ 7.4 will be replaced

8

with the following provision, adapted from Todd, 2015 WL 433481,
at *4:

> Procedures for Approving or Objecting to
> Disclosure of HIGHLY CONFIDENTIAL –
> ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL
> – SOURCE CODE Information or Items to
> Experts: Unless otherwise ordered by the
> Court or agreed to in writing by the
> Designating Party, a Party that seeks to
> disclose to an Expert any document,
> information, or other item that has been
> designated HIGHLY CONFIDENTIAL – ATTORNEYS'
> EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE
> CODE first must complete a reasonable
> investigation of the Expert and determined
> (1) that the Expert's current employer(s)
> are not competitors of the Receiving Party,
> (2) that the Expert is not a past employee
> of a Party or a Party's competitor and at
> the time of retention not anticipated to
> become an employee of a Party or a
> competitor; and (3) that the Expert, and all
> persons working with or for the Expert that
> will receive any document, information, or
> other item that has been designated HIGHLY
> CONFIDENTIAL – ATTORNEYS' EYES ONLY or
> HIGHLY CONFIDENTIAL, have executed the
> "Agreement to Be Bound" (Exhibit A).
>
> For each such investigation completed, the
> Party or its counsel who conducted the
> investigation must prepare and sign a
> declaration attesting to the reasonableness
> of his or her investigation and that the
> investigation determined (1) that the
> Expert's current employer(s) are not
> competitors of the Receiving Party, (2) that
> the Expert is not a past employee of a Party
> or a Party's competitor and at the time of
> retention not anticipated to become an
> employee of a Party or a competitor; and (3)
> that the Expert, and all persons working
> with or for the Expert that received the

9

> Protected Material and executed the
> "Agreement to Be Bound" (Exhibit A).  The
> Receiving Party shall keep and store all
> such declarations and shall provide them to
> the Designating Party at the conclusion of
> the litigation if the Court so orders upon
> showing of good cause by the Designating
> Party.

Relatedly, Plaintiff's request for an order requiring the parties to confer to develop a definition of competitor for the purposes of the Expert Disclosure Provision is granted.  See Pl.'s Mem. in Opp'n 2.  A list of agreed-upon competitors will provide each Party and each affected expert with a basis upon which to attest that a given expert is in fact not affiliated with a competitor of the Designating Party.  The parties shall meet and confer to create an initial list, and shall have an ongoing duty to meet and confer in the event either party wishes to modify the competitor list.

**Proposed Protective Order – Source Code Provisions**

Defendant next seeks to establish certain procedures for the production of source code.  See Wall April 1 Ltr. 3-4. Plaintiff contends these provisions are "premature at the outset of discovery" and potentially unnecessary, and requests that entry of these provisions be delayed by 60 days.  See Pl.'s Mem. in Opp'n 5-6.

The importance of source code to this litigation is without doubt, as is the sensitivity of at least a portion of the source code.  See Second Amended Complaint (hereinafter "SAC") ¶¶ 57-58, 65, 77; see also Def.'s Reply Mem. 6 (noting that several of Plaintiff's responses to Defendant's document request condition production on the existence of a protective order protecting source code confidentiality).  Though Plaintiff contends that "at least some, and perhaps most, of 24/7's source code potentially at issue may have been publically viewable at the relevant times," Pl.'s Mem. in Opp'n 5, that still leaves some source code that requires safeguards.  Indeed, Plaintiff has not provided an alternate procedure, requesting instead a 60-day postponement of entry of these provisions.  More than 60 days have passed since this dispute was first raised, and this issue remains unresolved.  In the interest of protecting the confidentiality of source code and in providing a methodology that will permit discovery to move forward, Defendant's proposed provisions relating to protection of source code will remain in the PPO.

**Proposed Protective Order – Patent Prosecution Bar**

The final issue relating to the PPO is Defendant's

11

proposed provisions regarding a patent prosecution bar. See
Wall April 1 Ltr. 4-6. The parties agree that the "party
seeking imposition of a patent prosecution bar must show that
the information designated to trigger the bar, the scope of
activities prohibited by the bar, the duration of the bar, and
the subject matter covered by the bar reasonably reflect the
risk presented by the disclosure of proprietary competitive
information." In re Deutsche Bank Trust Co. Americas, 605 F.3d
1373, 1378 (Fed. Cir. 2010) (cited by both parties: see, e.g.,
Wall April 1 Ltr. 5; Pl.'s Mem. in Opp'n 7). The parties
dispute the PPO's language relating to the "scope of activities
prohibited by the bar," specifically the use of the phrase
"directly or indirectly" in the following provision:

> For purposes of [the Patent Prosecution
> Bar], "prosecution" includes directly or
> indirectly advising on, consulting on,
> preparing, prosecuting, drafting, editing,
> and/or amending of applications,
> specifications, claims, and/or responses to
> office actions, or otherwise affecting the
> disclosure in patent applications or
> specifications or the scope of claims in
> patents or patent applications, whether in
> original prosecution, reissue,
> reexamination, inter partes review, or
> postgrant review.

PPO ¶ 9.2 (emphasis added); see also Pl.'s Mem. in Opp'n 7;
Def.'s Reply Mem. 8.

Plaintiff correctly notes that "The Federal Circuit explicitly held that not all patent prosecution attorneys are involved in competitive decision-making."  Pl.'s Mem. in Opp'n 8 (citing In re Deutsche Bank, 605 F.3d at 1378-79.  Specifically, the Federal Circuit observed that:

> Some attorneys involved in patent litigation, for example, may have patent prosecution duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements.  Similarly, some attorneys may be involved in high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings, but have no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios.  There is little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation.

Id. at 1379-80.  Plaintiff proposed excising the term "indirectly" from PPO ¶ 9.2.  See Pl.'s Mem. in Opp'n 7.  Defendant counters that the phrase "directly and indirectly" is intended to encompass the type of substantive work which was approved for a bar in In re Deutsche Bank.  See Def.'s Reply Mem. 8.

13

Since the parties cannot agree on the meaning of the phrase in question, the optimal approach is to excise it completely, and add clarifying language to the section on the activities exempted from the bar.  PPO ¶ 9.2 will now read:

> For purposes of this Section 9, "prosecution" includes advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of applications, specifications, claims, and/or responses to office actions, or otherwise affecting the disclosure in patent applications or specifications or the scope of claims in patents or patent applications, whether in original prosecution, reissue, reexamination, inter partes review, or postgrant review.  The term "prosecution" does not include patent prosecution duties that involve little more than reporting office actions or filing ancillary paperwork, such as sequence listings, formal drawings, or information disclosure statements; involvement in high-altitude oversight of patent prosecution, such as staffing projects or coordinating client meetings having no significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios; and any other activities that present little risk that attorneys involved solely in these kinds of prosecution activities will inadvertently rely on or be influenced by information they may learn as trial counsel during the course of litigation.  Further, to avoid any doubt, "prosecution" as used in the section 9 does not include representing a party who is challenging the validity of a patent in any such proceedings.

**30(b)(6) Deposition**

Finally, Defendant seeks to compel Plaintiff to produce a 30(b)(6) deponent to answer questions on topics relating to allegations made in the SAC. See generally, Letter to the Court from Carolyn S. Wall, dated April 17, 2015 (hereinafter "Wall April 17 Ltr.") Attachment A Subject Matters For Testimony (hereinafter "Attachment A") (reflecting the proposed 30(b)(6) deposition topics). Plaintiff contends that the proposed deposition would violate its work-product privilege and constitutes untimely contention discovery. See generally Pl.'s Mem. in Opp'n 2-7. In the alternative, should the Court grant the instant motion to compel, Plaintiff requests that the Court preclude Defendant from pursuing supplemental 30(b)(6) discovery. Id. at 7.

Having reviewed Defendant's proposed deposition topics, the Court is persuaded by Plaintiff's contention that compelling this 30(b)(6) deposition is unwarranted. See Pl.'s Mem. in Opp'n 3 (citing United States v. District Council of New York City & Vicinity of United Bros. of Carpenters & Joiners of Am., No. 90 Civ. 5722, 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992)).

While the work product implications are not as clear

15

cut District Council,[2] a considerable number of the 30(b)(6)
deposition topics fairly constitute contention discovery and
improperly require Plaintiff to "collect and synthesize all of
the information in [its] possession; . . . that [it] then impart
that body of knowledge to [the deponent]; and . . . that [the
deponent], in turn, feed it back to defendant[] in response to
[its] deposition questions." Id. at *15; see, e.g., Attachment
A ¶¶ 1 (relating to "every alleged trade secret"), 3 (instances
of breach of contract), 8 (facts supporting contention of patent
infringement), 9 (facts supporting contention of violation of
intellectual property; 10 (facts supporting contention of
spyware deployment and system disruption); 11 (facts supporting
contention of interference with business relationships), 16
(facts supporting contention of abuse of back-end systems); 20
(facts supporting contention of intentional manipulation of
Liveperson's technology); 21 (facts supporting contention that
[24]/7 "abused" its access to Liveperson's systems); 23 (facts
supporting contention that [24]/7 engaged in illicit conduct or
spying tactics); 26 (facts supporting contention that [24]/7's
conduct amounted to hijacking of Liveperson's program), 29
(facts supporting contention of unauthorized use of Liveperson's

---

[2] In that case, the Defendant intended to depose a government law enforcement
agent regarding the investigative steps taken by government attorneys and law
enforcement officials which led to the Defendant's prosecution. See
generally District Council, 1992 WL 208284, at *1-2.

programs), 36-37 (facts supporting contentions of breach of two agreements at issue in the litigation, and 38 (facts supporting contention of improper copying or hijacking of Liveperson's programs through client websites).

A motion to compel is unjustified at this stage in this litigation.  Plaintiff informed Defendant of all individuals with relevant knowledge regarding the allegations in the SAC, and in response to Defendants' document requests, will produce documents relevant to the SAC's allegations.  To the extent that Defendant is not after contention discovery, [24]/7 is free to depose the witnesses identified by Plaintiff.  These depositions will be more practicable and less burdensome than requiring one or more general 30(b)(6) deponents to synthesize and familiarize themselves with the facts and contentions responsive to every one of Defendant's 40 deposition topics.  To the extent that Defendant is seeking contention discovery, "depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."  JPMorgan Chase Bank v. Liberty Mut. Ins. Co., 209 F.R.D. 361, 362 (S.D.N.Y. 2002).  Under the Local Rules, contention interrogatories, available at the close rather than the beginning of discovery, will provide Defendant will the

17

information it seeks currently.  See Local Rule 33.3(c) ("At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the Court has ordered otherwise."); see also, Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08-cv-5023, 2009 WL 3463912, at *1 (noting contention interrogatories are "a more appropriate means of obtaining the information sought" through a 30(b)(6) deposition).  Consequently, the motion to compel is denied.

Conclusion
<u></u>

       Upon the conclusions set forth above, the proposed Expert Disclosure, Source Code and Patent Prosecution Provisions as modified above are incorporated into the PPO.  The parties shall meet and confer to generate a list of competitors to be used in conjunction with the Expert Disclosure Provision. Defendant's motion to compel is denied.

       The parties shall provide the Court with an updated PPO for its review, after meeting and conferring regarding the modifications as outlined above.  The parties remain free to agree to, and jointly propose, language in place of that provided in this Opinion.

       It is so ordered.

New York, NY
July 29 , 2015

ROBERT W. SWEET
U.S.D.J.